The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Be seated. We want to welcome everyone to the Fourth Circuit this morning. Look forward to the arguments of counsel in these cases. The first case, a pair of appeals involving Booking.com and the Patent and Trademark Office. Mr. Walters. Good morning, Your Honors, and may it please the Court, Tyce Walters for the government. As the district court found, plaintiff could not have registered Booking as a mark because that term is generic for precisely the hotel reservation services in plaintiff's trademark applications, nor could plaintiff have registered Booking, Incorporated or the Booking Company because the Supreme Court has held that merely adding a designator of corporate identity to a generic term does not permit one business to appropriate that term and prevent its competitors from using it. Although, com is not a corporate identifier. Not precisely in the same sense that incorporated or co is. It is in many ways the primary designator of an Internet company as dictionary definitions show in the Internet of Europe. That's certainly correct, Your Honor. But as every court of appeals to have considered the question has recognized, the mere addition of .com in most circumstances will not transform a generic term into a potentially registerable trademark and that's because a consumer in the market for online reservation services would understand the term Booking.com to name a website providing exactly that type of services. That's to say that the term is generic and it's presumably also the reason that plaintiffs chose the name in the first instance and now wish to prevent competitors from using it. It's the same reason that a company would want to call, a grain seller would want to call itself Grain Incorporated or the Grain Company and prevent people from using that term. Although the company presented expert testimony to the contrary. I assume that Your Honor is referring to the professor of philosophy who suggested that use, that a term must be used generically in everyday speech in order to function as a generic term rather than a trademark. Reliance on that rule would require upending a vast amount of trademark law, not least the Supreme Court's Goodyear's decision. No one talks about what is your favorite grain ink, but that term is definitionally generic. And of course, this is well positioned to identify the common meaning of words. I think the advertise.com case is particularly helpful for that, Your Honors. So in that case, the company AOL sought to register or sought to enforce as a trademark the term you have mail to mean that internet users had mail. And although they had offered a great deal of evidence that in fact consumers did associate the term you've got mail with AOL, this court nonetheless held as a matter of law. We all did back in those days. Indeed. We all did in a long time. You got mail. Exactly. Very nice. These terms, one, booking, and secondly, I guess com or dot com, as I understand it, both sides agree that individually they are generic and they wouldn't qualify. It's the question is when you put the two together. I think that's the dispute here. Is that correct? I'm not certain that opposing counsel agrees that booking is generic. The district court certainly found that it was generic for booking.com services, but I think that it is difficult to argue that it's not. When you're looking at a dictionary in terms of what booking means, but at least we, as I understand it, it's putting the two together that creates the dispute here and where the That's exactly right, Your Honor. And as I said, the way that the Federal Circuit and in the Advertise.com case, the Ninth Circuit has looked at this is it asks whether dot com is being used in its generic sense to mean simply that the goods or services that are the other term is generic for are being provided online or at a particular website address. And if so, dot com serves no source identifying function. It doesn't convert that generic term into a trademark. But if you do look at them together, you have a survey, a well-regarded survey that finds that 75 percent of the relevant public looks at booking.com as a brand. And also, you do have the burden of proof on this issue, do you not, on genericness? Yes, Your Honor. Although the burden then shifted to booking.com to show that there was error in the in the board's decision. But, but initially before the board, we did have the burden of proof, that's correct. And but but this as to the survey evidence, Your Honor, there's a few reasons why that's irrelevant. The first is that it is a Teflon survey. And as this court held in Hunt Masters, and I'm quoting here, where it is not necessary to determine whether a term has become generic through common use, a customer survey is irrelevant. And no one here is contesting that the term has become generic through common use. The only question is the meaning of those words. So it's much more like either the retail services case, in which this court held that extensive evidence that there were millions of paying subscribers to the freebies.com business was held that the evidence that consumers in fact associated the phrase you've got mail with AOL was simply irrelevant because that term was being used within the heartland of its ordinary meaning. Everyone hearing that term would understand exactly that it was being used to mean what it was. Similarly, of course, the Judge Friendly in the Abercrombie and Fitch decision noted that no matter how much success the user of a generic term has achieved in securing public identification, that alone does not convert a generic term into a registrable trademark. So that is certainly, were this a descriptive term, that sort of evidence would certainly be relevant, Your Honor. But given that it's not, and also under the Hunt Masters decision, and this isn't a case that we are debating whether or not a term has become generic through common use, the I would note that You're saying that the district judge shouldn't have considered the survey. That's correct, Your Honor. That was, she made a big mistake there. We think so, yes, Your Honor. And then instead, the correct analysis is the one put forth by the Federal Circuit, where in the Hotels.com case, for instance, there was similarly a Teflon survey purporting to show that consumers understood Hotels.com to be a brand, and the Federal Circuit there explained that registrability does not depend on the dot-com combination. District court bound by the Federal Circuit's determination on this? No, Your Honor. But we do Sort of the reason they chose to go this way, Federal Circuit sort of limited in its review of these cases when they come up. District court has, it looks like to me, much more leeway. This district court judge took that leeway. It is true that the Federal Circuit reviews factual questions for substantial evidence. It reviews the law, of course, de novo. I would point out that the Ninth Circuit, which has similarly accorded generally no trademark significance to the addition of dot-com, they are not reviewing deferentially. And in fact, in the Advertise.com case, they, the review there was for abuse of discretion, and the Court of Appeals held that the district court had abused its discretion in concluding that Advertise.com was a trademark. As to the Federal Circuit, the Federal Circuit, in explaining the function of dot-com when added to a mark, has analogized that to the Goodyear's case, has never suggested that it would reach a different conclusion were this not, were it not reviewing on substantial evidence review. It seems pretty clear how this case would have turned out had it gone to the Federal Circuit, to me. I think that's right, Your Honor, yes. So, ergo, the reason you would bring it here, which is not a, I mean, that's permissible, but the district court judge here was very careful and did not just do this blindly, but actually looked at those cases and distinguished them. And that survey, obviously, was a very important part of it. So we agree, of course, the district court wasn't bound, and it did certainly take a close look at those cases and decided that it did not believe they should be followed. We think that's error for a few reasons. The first is reliance on that survey is contrary to this court's precedent in Hunt-Masters, which said that a Teflon survey... We're reviewing that de novo? That's correct, Your Honor. With respect to the survey, am I understanding you to be saying you don't challenge the legitimacy or the worth of the survey itself? What you're challenging is its use here. That's exactly right, Your Honor, yes. We review that independently for what? I think the question as to whether survey evidence is valid evidence would be a de novo determination, and it is entirely decided by this court's decision in Hunt-Masters, which again said it is not necessary. It's not necessary. It doesn't say it's not permissible or cannot be useful. And the reason that I have a bit of a problem understanding it is, if you have a top-level domain name, like com, and then you have a second-level domain name, like booking, it can only equal a descriptive mark if it's acquired a secondary meaning. So it would seem to me not unusable in that context. Why would it be problematic, since the court simply said it wasn't necessary, not that it was impermissible? So a few points on that, Your Honor. The first is, I think I may have misread the quote a little bit. Where it is not necessary to determine whether a term has become generic through common use, a customer survey is irrelevant, is the full quote. So it's saying that the survey is irrelevant, except in that narrow category. It sounds like we're looking at an evidence ruling. And we normally review those for abuse of discretion. Well, I think the general question as to whether a particular category. Whether it's relevant or not, you know, we let the trial judges figure that out. I think the correct, this court is clearly speaking in Huntmasters, in blanket terms, in the fact that a particular category of evidence is simply not relevant to the decision. But even were that survey appropriate evidence, the other, again, there was a similar survey in the Hotels.com case. And the reason why that it shouldn't matter here is that in the same way, Booking.com, if they wish to register the mark Booking Incorporated, couldn't come into court and say we have a survey and show that lots of consumers associate Booking Incorporated with our business. As a legal rule, the mere addition of Incorporated to Booking simply makes no difference. And the same would be true if a store calling itself the grocery store were to achieve tremendous amounts of consumer success. So that if they could come in with a survey and say, whenever anyone says we're going to the grocery store, everyone knows they mean our store. They still couldn't monopolize the term grocery store and prevent its competitors from using it. As the Ninth Circuit held, to grant a trademark in a case such as this would give far more And there's a reason that there is ebooking.com and bookit.com and hotelbooking.com, and it's because all of those businesses are naming themselves after exactly what it is that they're doing. They're providing online booking services. And it would be in contravention of the principles in the Goodyear's decision and basic trademark principles to allow booking to take that word from the linguistic comments. Even if indeed, as they say, they've been very successful as the America Online was with you've got mail or as freebies was with the term freebies in creating consumer association with that term. You still can't take a common term for your own goods and services out of the linguistic comments. You mentioned our case, Hunt Masters, which still dealt with surveyors. But that case seemed to indicate that, well, if the term is current to corn, that's a different animal. And the district court judge here said, arguably, this is corn. He used the distinguished Hunt Masters case. He did say that, or she did rather, I apologize. But when you look at the Hunt Masters case, what they're talking about when they say a coin term is something like thermos or Teflon, terms that simply had no equivalent. They're not simply using English words and putting them together like booking and .com. And if there were any doubt of that, the quote that I had read earlier that made clear that the customer survey is relevant only when the argument is that a term has become generic through common use disposes of that. It shows that when you're talking about coin terms, it's a fairly narrow category. Things like the argument that Google has become generic in the Elliott case for internet searching or Teflon or thermos. You want to speak to the Ternus fees? Yes. Or is somebody else doing that? No, I can do that, Your Honor. We do think that the Shamus case squarely held that PTO's personnel expenses are included in the phrase, all the expenses of the proceeding. This court has had many opportunities to question that holding in the initial en banc petition in Shamus. In the initial re-hearing en banc here, the Supreme Court denied a cert petition in Shamus. The plaintiff in Shamus . . . I don't think you ought to attach much weight to the fact that we didn't have an initial en banc. We normally don't do that. I certainly agree, Your Honor, but I think it is . . . Apologies. I do think it is relevant . . . That's not your appeal. That's their appeal anyway. That's correct, Your Honor. Yes. That's the second appeal. Yes. So, I'm happy to save the remainder of my time for rebuttal. And then you'll address their appeal with regard to that issue? Hmm? Then you will address their appeal with regard to that issue? I'd be more than happy to, Your Honor. I can also address it now, whatever the court would prefer. Take your time as you wish. On your rebuttal, is that when you're . . . He has rebuttal and the other has . . . Okay. Mr. . . . Yeah. Yeah, we got . . . Two rebuttals. Right. Mr. Moskvin? Good morning, Your Honors, and may it please the court. The overwhelming . . . The unusual and, in some ways, unprecedented nature of this case is that we have what is probably the top recognized brand in its field of online travel reservations, as demonstrated by the record. Not just the survey, but that which coalesces with and is mutually supported by other evidence, the fact that literally millions of customers have voluntarily or proactively affiliated themselves with Booking.com by putting themselves on its mailing list, by downloading its mobile app, by liking it on Facebook. There are . . . Well, we are at great risk, and contrary to what the government suggests, we are . . . How have you protected yourself? You've done all this. You've got this wonderful product. Right. You know, I was in a different country at one point, and I went looking for a tailor, and right beside it was one that looked just like it, and there was no rule that prohibited me from doing it. I mean, what is protecting you? I understand the domain name is protected. Well, they own a registry, so you've got that solid, but you have some other protections, don't you? Well, the problem is we are limited in how well we can protect ourselves, and if this court were to say that Booking.com is generic and unprotectable, then nothing would stop Expedia or Travelocity, two smaller, frankly, competitors, from advertising themselves as Booking.com. Hotels.com? Hotels. How does that match up with this? Well, there are very fundamental differences in the two cases. One, and I think you have to go back to start with, which has been omitted, the seminal case in the Federal Circuit was the Opendahl and Larson case in 2004, which held, contrary to what the government is now saying, that it would be an error of law, and that's a bright-line rule that precluded registration of dot-com names. There, it was patents.com. The court there expressly noted that there were two different, at least two different ways to protect names, dot-com names. One is if they're inherently somewhat distinctive, such as tennis.net, and the other is if they have acquired distinctiveness. And it is, I think, essential to distinguish, and this gets blurred in the government's presentation, between these fundamentally different concepts of descriptiveness and genericness. Descriptiveness, American Airlines is at least as descriptive, if not more so, than Booking.com. It tells you exactly what it is, but nobody would doubt that American Airlines in the country, only one-fifth of the market capitalization of booking holdings, is a trademark. There is a difference, though, isn't there? I mean, when you use apple.com, I mean, the computer company is not an apple, and they're not in the business selling apples. I mean, so when you use AmericanAirlines.com, even though it's Airline in America, that's sort of descriptively different than bookings is exactly what you're doing. Well, let me come back to the point you raised earlier. First, we don't, I don't think it's correct to say that either booking or dot-com is generic. I do acknowledge Judge Brinkema said that booking is generic. I would say they're descriptive. I disagree with her on that point. Well, I would say they're descriptive, or maybe even suggestive, but at least descriptive. And frankly, that is what the, coming back to answer your more recent question, which I was not, which I hadn't forgotten, that the dot-com in the Operdahl and Larson case, they held it was descriptive, not generic. And so, you know, even if it were generic, even if all those two terms were generic, Coca-Cola, those are two generic words. We know what they mean separately. Put them together, and it's the most popular soft drink in the world. Booking.com was never used by anyone else before, unlike in Hunt Masters. There are dozens of, and it was admitted there, there were dozens of crab houses, or in the other case they cite shoe warehouses. There are dozens of shoe warehouses. There's only one booking.com. Would you have no basis for protecting yourself against someone else using booking.com unless you have some sort of recognition from USPTO? It is a very uncertain path, and we have not, frankly, because of the uncertainty, we have not tried to protect it. What basis, what basis would you have for going after it? There is some case law, most of it rather ancient. State law? State law, unfair competition type claim. The, but the. Trade practices. Right. Something like that, a state law tort. Yes, but the irony here is that in the cases that say that it's a, it's a problem to allow a company to have exclusive rights, generic rights on a term like thermos or aspirin, it's because it deprives people of the ability to use the English language. Whereas in this case, the government, the Patent and Trademark Office admitted in its finding of the TTAB that it is impossible, grammatically and logically impossible to use booking.com in a sentence as a generic term. Well, you can say booking itself is not generic. So if you prevail in this case, are you then able to tell anybody with that word in their sight to say, you've got booking, that's our term. Absolutely not. Even though you maintain it's not generic. The statute, the trademark statute, and it was fairly recently, in the last ten years I believe, acknowledged by the Supreme Court in the KP Permanente makeup case. There's a statutory provision for fair use. We could not, we can't monopolize the words used in their descriptive sense. And frankly, because it is a descriptive market, it always will be limited in what we, how well we can enforce it. But if, for example, and this is a hypothetical, but if you had something like autobooking.com, you wouldn't want that to happen, would you? I didn't catch, what was that? Autobooking.com. That wouldn't be permitted if you got this trademark, right? It's hard to know because likelihood of confusion is a multi-factor test. It's conceivable that an autobooking. I don't know whether or not you're going to let autobooking.com go. That's the purpose of having booking.com. You want that domain name, but you also want that trademark. Only. And take auto in front of it, put any number of other things in front of it. Only. Any variation with that name is something you want to protect as a trademark because booking.com, in your view, is protected. Only if, I would really need more facts to know. You would need the Pizzeria Uno factors. Right. Likelihood of confusion. Just by itself, if it was selling cars, I don't think we would care about it. It's conceivable and under some hypothetical that if it was renting cars, so that's similar. There are a lot of travel reservation sites that also you can rent a car. Reservationbooking.com. Not going to permit that, are you? I don't know. Inherently, it really depends on how they use it. What do you want to protect? Tell me one that will come back and infringe it. It sounds like to me you don't mind them doing those things, so what are you protecting other than the naked term booking.com? Again, one example I cited is false advertising where people call themselves booking.com. False advertising. But those who are not false advertising, they're calling themselves their own company, but they're just using that name, booking.com. And some of it will be one of the factors. So if reservationbooking.com also did other things, for example, if it used some of the appearances of the way the booking.com website looks like, that would be an additional factor. The next one that comes up, they got a nice little product they want to put on a food show and they want to call it cooking.com. That's protected? I can't imagine we would have a reason to go in. No difference than you'll protect it. In other words, they have the same argument you have. But that's fine. They're not competing with us. So every one of these generic or not generic, what you call cooking or booking generic, every one of them when you add .com onto it, doesn't that lead to the conclusion that we just opened the door to any generic term when you add .com to it to then be classified as a trademarkable? Let me come back to what the federal circuit said, and it's never been reversed by another. The only subsequent cases were other three-judge panel cases, such as hotels.com. I think you ruined the federal circuit on this. You didn't take this to the federal circuit. You took this to the judge's break because you knew what was going to happen at the federal circuit. Well, I'm not disagreeing with you on that, but I think the federal circuit has ceased to go back to its original case, the Opadol and Larson case, which said just prove secondary meaning. And we've done that in spades here. And it wasn't even our burden of proof. And I really do want to come back to the fact because, frankly, it has always been the government's burden of proof to prove genericness, to show that the primary significance, what consumers actually think, not what we hypothesize they might think, which is the way some of the more recent federal circuit cases have gone, and that's yes. No, I just wanted to alert you to the fact that I do have a question when you come to a pause. Yes, but it has always been their burden to prove in the district course, because it was a de novo review that remained their burden to prove by clear evidence that booking.com, the specific word is generic, to overcome the volume of facts that under the Opadol and Larson case would have been more than sufficient to show. Patents.com, they said if it had secondary meaning, it would be protectable. We have secondary meaning here. It's the top brand in its field. It would be unprecedented. And a betrayal, I think, of the principles behind the Lanham Act to protect trademarks so as to prevent consumer confusion and to protect the investment of the trademark owner to deny protection here. So I'm sorry, I could keep going, but let me take your question. I have a couple of questions. The first is you're in, it would seem to me that you're in a rather, you're in something of a quandary in the context of similar terms, because you do, in the context of a similar .com name, you would have to go through the Pizzeria Uno factors and prove the eight or nine or however many factors there are. But you're almost compelled to, to some extent, are you not? Because if you don't, then you're accused of not defending the mark. And you can lose a mark because you don't defend it. That's quite possible. That is a hypothetical that I don't know how this would play out. But if this court takes away protection for booking.com, then we'll certainly never know. I do also really want to call this court's attention to the fact, what I think is one fundamentally incorrect premise. In fact, I think it's the entire premise of the government's appeal. Could I ask my second question? Oh, sure. My second question deals with the government's position on the Teflon survey and its relevance and the district court's ability to rely on it. And it was interesting to me because the district court did discount. There was a survey that the district court discounted the value of. But it nevertheless found the Teflon survey compelling in helping to establish descriptiveness or secondary meaning. So could you tell me what is your response to the government's assertion that apparently they seem to feel that the court abused its discretion in relying on the Teflon survey? First of all, I agree with Your Honor, Judge King. Typically, the decision to admit or not a survey in trademark cases, and that's not an issue that's been briefed, but that is an issue that is almost always decided as an issue of evidence. It goes to the weight of the survey, not its admissibility. Here, as Judge Brinkham has found, it's an open question, unlike in the Hunt brothers' case where there was an admission that the prior admission by the claimed trademark owner that Crab House was not protectable and it was widely used. There was at least cause for suspicion that maybe they shouldn't be able to reclaim it from the public domain, where that's the very issue we're asked to decide here. I will also say, and perhaps Your Honor was thinking of the Hotels.com case where the Federal Circuit affirmed on the- No, I was just asking for your response to the government's assertion that it was irrelevant and an abuse of discretion. And we have cited in our brief at least half a dozen cases where, I know one I was involved with many years ago, also a challenge to the government where Sports Channel was, we used a Teflon survey and it was admitted- Was there context there? It was a denial of registration by the trademark office. But there are half a dozen other cases we've cited in our brief where Teflon surveys are used precisely in these circumstances where there's a term that is on its face. There's a question whether it is inherently protectable or not. And the survey is the best way to determine whether or not it is. And I also would say in this case you really, it's the coherence notion of what is true or not. We have, this survey is consistent with all of the other evidence in the case of consumer recognition. And I just, if I can, but my time is expiring, I really just want to say that- You need to get to that attorneys' fee issue too. Yes, maybe in my rebuttal, but the false premise of- You're made to cross the field. Yes, that of their appeal is that Judge Brinkman made a ruling of law that anytime you add, there's a blanket rule, anytime you add .com to a descriptive or generic term it becomes a trademark. That is exactly not what she said. She said it would be imprudent to adopt such a sweeping presumption. She said only that this is- With this so-called secondary level that she didn't say that? She said that it was generally, and that was simply she was also quoting their own, the government's own expert who said- Why would that flow anyway if we rule in your favor? Excuse me? I mean, that flows. Why is that not going to flow from this decision? That will be true. I don't know that it's true. I'm only concerned about protecting booking.com. I'm not looking to make- I understand that, but beyond booking.com, there's all sorts of implications of what does it mean. Well, all I will say is we're simply asking the court to apply the existing test of genericness. What is the primary significance to consumers, wherever that may go? The government has not articulated what is the standard it seeks to replace, what rule of law it seems to want this court to apply, and it is not a question of law. It is entirely a question of fact, and only by mischaracterizing Judge Brinkham's decision to be one of law, it was not. Did they try to evade their burden of proof now to show clear error in her ruling, which I don't think they have done. Thank you. And I apologize that I was not able to get to our cross appeal. Right. You got a cross appeal. You won with Judge Brinkham on the merits. Yes. And she ordered you to pay their fees. Correct. As part of the expenses. And you're challenging that, and you're saying that our Shamus decision doesn't cover that? Well, what I'm, two things. Or do you want us to revisit Shamus? I think Shamus needs to be revisited in light of Baker Votts. It's already revisited. Well, it may be that it would require en banc review. How could it not? Well, only because we've cited cases in our briefing that if there's a conflict with. But it hasn't been called into question either by the Supreme Court, or it hasn't been called specifically into question by the Supreme Court. So what else would motivate us to take it, to try to wiggle around it? Well, I would say to that, just the Federal Circuit's recent decision in Mankwest says it is in conflict. I understand. Federal Circuit went the other way. Well, it just, right. Exactly. The other two reasons why. They went the other way. As the government acknowledges, you are free without taking this en banc to consider the First Amendment argument, which was not considered in Shamus. And I think for the same logic, the argument of statutory interpretation, what is of the proceeding? Do you prefer that with Judge Brinkman, the First Amendment argument? Yes. So you think that's here? We think that, and the government acknowledges that because that was. Baker Botts decision helps you? Yes. That's your best argument on that point. We can't overrule Shamus. But, you know, Shamus itself, I mean, reasonable minds can disagree as to whether it's correct. But we're bound by it. I understand. But if your argument is that Baker Botts implicitly or explicitly overruled it, then that's the direction to go in rather than trying to say. That's the only shot you got at it. Well, and, again, we do cite some cases, all of which rely on a law review article by former Justice Rehnquist, that if a Supreme Court decision has even implicitly changed the law on something, then circuit courts are still bound to follow the new Supreme Court interpretation. Baker Botts didn't have anything to do with trademark. No, it didn't. But it did have to do with the American rule. And I think the. You're saying that the American rule has been stood on its head in your case. You won and then had to pay their fees. Right. And what. I'm trying to help so we can get his view of it here. And more, even more pointedly, what Baker Botts said and is, I think, is in direct conflict with the premise of the Shamus decision, that the American rule means that the, applies in all cases, win or lose. Whereas the Shamus case began with an analysis that limited the American rule to prevailing party cases. And that is, I think, a fundamental tension analytically between the two. And right now there's a circuit split. There is indeed. Between us and the Federal Circuit. There is indeed. There are no other circuits to weigh in, right? Not that I'm aware of. Okay. You say five minutes. Thank you so much. Let's see what you've got to say about this cross appeal in particular. You've got something on rebuttal too, don't you? Thank you, Your Honors. Just a few quick points in rebuttal. The first is, I think, booking slightly misunderstands the Apatow case. That case did not consider the question whether the mark there was generic. The board in that case had held, as it always does, first that the mark was merely descriptive and hadn't acquired distinctiveness. It will do that before turning to the question of whether something is generic. So that was the only ruling at issue before the board, before the Federal Circuit. And the Federal Circuit affirmed that ruling. It didn't hold that such marks are generally descriptive or generic. I looked at not only that case, but a number of cases that actually went in your direction and just made the decision, no, we're going to do this differently. Things have changed. This is outdated. And so now this is a new day, which is permissible given the level of review that she has on this here. And so I'm wondering to what extent is that significant in her determination given the manner in which she did it? So we agree. Of course, she wasn't bound by the Federal Circuit cases. I was bonding mainly to opposing counsel's suggestion that somehow the later cases were in conflict with In re Apatow. They're not. And while she wasn't bound, I think actually looking at the what the Federal Circuit actually said in In re Apatow should be persuasive, although obviously the district court was not bound and the district, the Federal Circuit said there that top level domains like dot com will most not often not add any significant source identifying function to a mark and that the board is correct that the overall impression of dot com conveys to consumers the impression of a company or commercial entity on the internet. And it went on to say that under good years, that impression bears no trademark significance. Now the Federal Circuit has carved out circumstances in which dot com could add trademark significance. And that is something like a brick and mortar store named tennis dot net, where dot net is not functioning in its usual way to say that something is a company online. Judge Brickham is wrong. Did she, did she in effect hold or say that when you combine this TDL with the SLD or whatever it's called, that in effect you can, that's what has happened here. And that's permissible to, to get a trademarkable exactly right. She held as a blanket rule and this is on both joint appendix 1124 and joint appendix 1129 that the combination of a generic term with dot com creates a descriptive term. And that that term is therefore upon a showing of acquired distinctiveness eligible upon a showing of acquired distinctiveness. So it's not, it's not absolute or inexorable. No, but it does shift. A generic term can never be a trademark. Whereas a descriptive term is capable of functioning as a trademark. And just as there's no question of fact as to whether booking incorporated is, is descriptive, if booking is generic, there's no question of fact if booking.com is generic is descriptive. If booking is generic, the exact same analysis should apply for.com as Inc. And the reason why that's true is evidenced in part by what we just heard from opposing counsel, which is they refuse still to disclaim the idea that ebooking.com is infringing, which they, that's not before that's really not before us and it's not incumbent upon them to defend what comes next. What the district court held is I, I thought pretty clearly is that it can acquire secondary meaning upon certain showings. It is not an automatic consequence of adding .com to a, a top level domain name like .com to a second level domain name like booking. Correct. It held as a it held as a blanket matter that a generic term becomes a descriptive term. And then once something is a descriptive term, it is possible for it to serve as a mark upon a showing of acquired distinctiveness. So it is true that there is then a further showing. And we haven't taken issue with the factual question, whether that further showing would have been made. But as this court held in the freebies case, when again, it was confronted with exactly the same sort of evidence that people understood that there was a, that, that people knew this company strong commercially successful, the plaintiff had shown a strong commercially successful mark with a well established secondary meaning. And that included millions of paying customers, but that was no relevance. Conversely, conversely, would you have us hold that it never can acquire distinctiveness? Correct. Your Honor. Yes. When, when .com is being used in its generic sense. Analytically indistinguishable from the corporate identifiers such as company and Inc. Not analytically indistinguishable, but the same analysis should apply that, that the exact. Analytically indistinguishable. But you're, you're saying you're arguing for a hard and fast rule that you would have us adopt a hard and fast rule that the combination of the top level domain name com and the second level domain name that, that might be generic can never acquire distinctiveness. I see that my time has expired, but if I, if I may. You answer all the questions. We might have some more. I will do my best. Yes, we do think that that's, that is exactly the right rule, Your Honor. In the same way that the grain.com had grain incorporated, taken the name. I just wanted to make sure I understood. Yes. Now I do think that this court, this could be resolved as a factual matter that you could just say in the same way that this court held in America online, that we understand what booking means. We understand what booking.com means. We understand they're being used to say that this is an online seller of booking services. That's exactly what they are. Therefore, this term is generic. Actually, I found an online booking service that referred to reserving bands for weddings. It would be generic for that as well. Of course, the term can be generic for multiple things. And if they were a theater ticket seller, it's quite possible that booking.com would be generic for that purpose as well. You don't really mean that they never can be done. Not even the federal circuit has said that. I mean, they left that door open. So the circumstance in which I would say it was never, could never be done is the one that the federal circuit has agreed on, which is that it can be a non-generic term only where.com is evoking something other than a commercial internet domain. So something like tennis.net or the other circumstances in the 1-800 mattress.com case, which again is very much on point. The plaintiff there had argued, or the trademark applicant there had argued that.com meant comfort for its mattresses. And while the federal circuit rejected the idea that.com was conveying an impression of comfort, that's the sort of thing where.com is not merely conveying a connection to the internet. If you have the contrary rule, Your Honor, then you have exactly what we have here, which is that many businesses that chose variations on booking.com, like ebooking.com, auto booking.com, anything like that, precisely because those businesses say that that term says what those businesses are, now have to look over their shoulders in an infringement suit. And if ebooking.com is smart, it's going to very seriously consider whether it has to change the brand that it has developed. Counsel represented in our court, they're not going to do that sort of thing. I don't, I think they expressly refused to represent that and said that they would  it would be a multi-factor inquiry and you know, although in fairness, he is bound by our cases that say it's a multi-factor consideration. That's certainly right. But I think that the fact that it's multi-factor actually is in some ways worse here, Your Honor, because it means that there's a lot of uncertainty for these businesses. What's your position on this cross appeal? We do think that with the exception of the first amendment issue that, that Shamus controls, we don't think Baker Botts changed the law here, Your Honor. Baker Botts dealt with the question of whether a bankruptcy attorney defending a fee petition against the bankruptcy estate could be said to have rendered actual necessary services for the bankruptcy estate. And that doesn't either explicitly or implicitly overrule Baker Botts. As to the first amendment issue, we don't think that there's any support for the notion that Congress can't provide two, two paths to review. One direct review to the federal circuit and the second district court review and say that an applicant has to pay all the expenses of the proceeding in the, in the more expensive of those two proceedings if it wishes to. Generally in terms of filing these types of actions, does an entity such as the booking.com entity, can they file at any district court in any circuit? That's correct. So they can either, they have two options. Look at the law and find out who doesn't have Shamus if they want to go differently on that, you're saying? They, they, they quite possibly can. And yes, now that, now that Congress kind of put that in there for a reason that even if you win or lose, you pay some fees that I guess they thought it would discourage you from bringing it there. If you knew you're going to pay law fees. Well, we do think that, that it is meant to fund the extraordinarily or the unusually expensive proceeding of a district court action, which provides. It doesn't say fees. No, Your Honor, but it attorney's fees. It doesn't Your Honor. It's expensive. It says all the expenses. That's correct. Other aspects of the statute did instances where they use the term fees, right? That's correct. Your Honor. Although none of those are referring to PTO, who of course generally don't hire attorneys. They have personnel. Deal with them. American rule when they want to. That's correct. Your Honor. I said that in a dissent in Chavez. That's, that's also true. Your Honor. That's your argument. Yes. U.S. TPO doesn't hire attorneys. Well, they have, they have personnel attorneys, but they don't, they don't go out and hire outside counsel as a general. The attorney's fees would be compensating the agency for a tough. It's like the EEOC. If we won, although our attorneys were salaried employees, we would be compensated for their fees. In an analogous situation? Yes. Oh, certainly right. I mean, the general rule, as this court recognized it in Chavez, I believe, is that because this is the time of salaried attorneys is being used. Yeah. I'm just unfamiliar with any, having worked for the federal government as an appellate attorney. I'm just not aware of an instance in the justice department or anywhere else where one got attorney's fees as opposed to the expenses copying or whatever. This is certainly an unusual statute, Your Honor. As I believe Judge King pointed out in dissent in Shamus, that there aren't many statutes that work this way, but Congress did choose to specify that it's all the expenses of the proceeding. And this court did explain that those did include the salary expenses of the time. Well, I also have statutes that say costs of proceedings are awarded, and they never meant costs to include attorney's fees. No, but expenses, as this court noted, expenses is a broader term than costs. That's your position. That is. That is. And I think it's the position of the court, at least for the moment, Your Honor. Could I just ask, because I honestly don't know, and I'm sorry to prolong this, where did the attorney's fees go since the attorneys are salaried? Where did the, oh, to PTO. It just goes into a general fund of some sort? I am not certain whether it is a separate fund or just for 1071B. Did the attorneys get a bonus? I'm fairly certain that while they might want a bonus, they do not get bonuses for that. But it is meant to fund the unusual expense of having a district court proceeding with de novo. Unusual. As opposed to the other option in 1071A, where it is administrative review on the record standard APA review, which is the other option that is, that a dissatisfied trademark applicant can select. Litigates all the time. There's the most common litigant in these courts. They don't get their attorney's fees. That's true. But again, there aren't similar statutes to this, I think, in very many contexts, Your Honor. It is certainly an unusual context. And the winner has to pay them. That's the thing that, of course, I've said all that, too. I mean, they got, these fellas from Booking.com won the case, and they have to pay your fee. Well, as the Court said in Shamus, it is a straightforward funding provision, and that if a dissatisfied applicant chooses, does not want to pay the fees, they are entitled to fulsome review before the Federal Circuit, standard administrative procedure-style review that, of course, is the standard for people who are dissatisfied with government action. That is your, I mean, it's their choice. Thank you, Your Honor. Thank you, Your Honor. Mr. Austin, you saved a couple minutes. Five minutes, actually. Thank you. Judge Duncan, going to your point, the other issue we raised that we think can be reviewed, which was not reviewed in Shamus, is whether these expenses are of the proceeding. And what we've argued is that, yes, they do use their own in-house attorneys, who would have been paid exactly the same, regardless whether they ever worked on this case. These are fixed costs, just as utility expenses if they lease a building. Why should, those are. I certainly do, I understand your point. Right. I just, I'm just not clear that Shamus allows us to revisit that identical issue. Unless we find some other avenue. I do confess that that is one, some of above my pay grade. I've given you some reasons why I think you can revisit it, but I know that's, that is a sensitive issue. What is manifestly clear to me is that both of these issues are linked in that, for some reason unknown to me, after 175 years in which the government never sought to enforce these expenses of the proceeding to mean attorney's fees, there was a change of policy. It was made quite explicit in the trademark rules, which we've cited in our brief, that they, in 2013, just changed the rule to say expenses no longer just mean witness fees and other incidental costs that we are accustomed to in litigation. It's like expert witnesses. You hire an expert witness. Yeah. And that's, so they changed their policy there for reasons we don't know. It became an issue, it's obviously become a rather hot issue. In the very same way, for reasons I don't understand. I think you're being very persuasive on this, but Judge Niemeyer answered those questions, in my opinion, in the Shamas case very clearly. Judge King pointed out those differences. You're making an argument, Judge King, he's probably loving this. He's not going to go anywhere. So that's why I say. We recognize each other's eloquence. But what is, you know, compelling to me is that the other side of the case also just involves a seemingly random change of policy because for years and years, the trademark office registered names very much like booking.com without objection and just changed their mind for reasons that we don't know. We've cited several of them in our. You say they changed their policy. I don't remember this part. I mean, I remember it was 175 years. But did they for 175 years, as you say, have a written policy? No. I didn't think they did. No, well, they did. The trademark office. And did they, after 175 years, put the different one in writing? Yes. The trademark office did not for 175 years, but there was in the trademark manual procedure, and it's cited in our brief, and I regret I can't pull up the specific number to mine right now. They changed the policy in writing in the trademark office in 2013. 2013. That's what I was getting at. Most of that 175 years, you didn't have the internet. You didn't have .com that was being used specifically for a purpose of creating a domain name. That comes along, and the question is that domain name becomes like .com is kind of standard out there. So you add a generic term to it, which you said booking is not generic, and I guess you have a reason for doing that. But the two of them together, is not any longer generic. But one thing that has, two things that have not changed is the controlling law. One is the statute. The federal trademark statute itself defines genericness, and it makes no exception for .coms. 1064 sub 3 defines it as the primary significance to users. So it doesn't matter what policy the trademark office now wishes to enforce. We have to look at the facts in each case. What do users actually, how do they use the term? And the unrebutted linguistic science in this case shows there's no such thing as meaning separate from use. It's unrebutted, and it's also admitted that you cannot use booking.com generically. So we have to. If you have a trademark called booking.com, that doesn't cover booking.org or booking.edu. I have every reason to believe you own those domain names. You would get those anyway. I mean, it has these different names, but it's the booking on it. Isn't that what you're trying to protect? We're trying to protect booking.com. You're asking me a hypothetical about some other instance which. Let me go back to your factors on it. Exactly. Booking is what we really want to protect. Well, no, really what we want to protect is booking.com, and I don't mean to sound evasive. The point is that is the trademark that the company has used for 20-plus years. That is the name by which it is known, and the evidence in this case shows that there was no booking.com before my client booking.com, and under the statute, under the Supreme Court precedent in Kellogg against Nabisco, and in this court's precedent such as the Glover case and even the America Online case where I might add that there the burden of proof was on America Online to show that you've got mail as generic, unlike here where the burden of proof has always been on the government to show by clear evidence that booking.com is generic. Would you be satisfied with a decision that said that, okay, you get a registrable trademark for booking.com, but the use of the term booking in any other setting, you do not get a trademark for that, nor do you get a trademark for .com, and therefore, only when that term is used as booking.com is your trademark being infringed. Would you be satisfied with that? I don't think that complies with the general rule. How would you be satisfied with that? I would be disappointed with that. I would prefer that. The reason is because you don't want them using booking even with a .com in certain other settings. We would have a very difficult time enforcing booking alone. I think the type of situation, we frankly will have a difficult time enforcing booking.com because of the statutory fair use defense, but given the corollary admission by the government that it's grammatically impossible to use booking.com, I don't think it's a great threat to competitors. If they are trying to trade on us, we're not interfering with anyone. At this point, we're just trying to protect what clearly has become associated with us, and honestly, I really don't know what scenarios might occur in the future. I would prefer. That's already occurring. You've got websites already. E-booking and buddy booking and that sort of stuff is already out there. And I can truthfully say we have not looked at any of those to try to contemplate possible enforcement action against them. What the client sees that it can enforce against where people copy the design of their website, but often that is a company that can be accompanied by other forms of copying that we hope we have a remedy against, and I trust that the courts will use, other courts will use their good judgment to appropriately limit any overreaching by my client or any other client or any other company in trying to use descriptive terms. And it's certainly not my intent to try to misuse the rights that we hope that are confirmed that Judge Brinkham assured we would have. Thank you very much. Thank you, sir. We'll come down and read counsel and call the next case.
judges: Robert B. King, Allyson K. Duncan, James A. Wynn Jr.